Peelle, Ch. J.,
delivered the opinion of the court:
This claim, of a Chickasaw Indian, for the loss of cattle and horses taken and destroyed by Cheyenne and Arapahoe Indians while grazing on the reservation of the Wichita and affiliated tribes of Indians, and which was presented to the Interior Department, was transmitted to the court by the Secretary of the Interior under section 2 of the act of March 3, 1883; and while in the letter it is not disclosed whether the reference was by reason of controverted questions of law or fact and no petition is filed we will'proceed to consider the case under rule 30 of the court on the assumption that the reference' was intended to solicit findings of fact and conclusions of law, with an opinion, in accordance with the section of the act under which the reference was made.
We have found the facts only so far as necessary to disclose the question of law arising under article 14 of the treaty of June 22, 1855 (11 Stat. L., 611, 614), which provides that “ The United States shall protect the Choctaws and Chickasaws from domestic strife, from hostile invasion, and from aggression by other Indians and white persons not subject to their jurisdiction and laws; and for all injuries resulting from such invasion or aggression full indemnity is hereby guaranteed to the party or parties injured, out of the Treasury of the United States, upon the same principle and according to the same rules upon which white persons are entitled to indemnity for injuries or aggressions upon them committed by Indians.”
*491 The provisions of that treaty were reaffirmed by articles 10 and 45 of the treaty of April 28, 1866 (14 Stat. L., 769).
That provision of the treaty evidently contemplates such injuries as result from invasion or aggression on the territory or reservation of the Choctaws and Chickasaw's and not from injuries which may result to some of their citizens while occupying the territory or reservation of other Indians.
In the present case it appears that the claimants’ decedent was pasturing his cattle and horses on the reservation set apart for the Wichita and affiliated tribes of Indians under ■some sort of an arrangement or lease which he and they had entered into, but under section 532, Regulations of the Interior Department of 1884, it is provided that “ Indians have no right to grant, lease, or otherwise convey the lands occupied by them for any purpose whatever unless such conveyance be made in accordance with treaty or with lawand the Attorney-General, in an opinion delivered by him in 1885 (18 Opins. Attys. Gen., 235)-, held that there was no law empowering the Interior Department to authorize Indians to lease their lands for grazing purposes, and that neither the President nor the Secretary of the Interior had authority to make a lease for such purposes of any part of an Indian reservation, nor would their approval of any such lease made by Indians render it lawful and valid. Therefore, at the time of the loss complained of the claimants’ decedent was not rightfully on the lands of the Wichita and affiliated tribes; but whether rightfully or wrongfully on said lands is immaterial, as under the article of the treaty relied upon the United States only guaranteed indemnity for loss “ from domestic strife, from hostile invasion, and from aggression by other Indians and white persons not subject to their jurisdiction and laws,” clearly meaning that the United States only guaranteed indemnity for loss .occurring from domestic strife, hostile invasion or aggression by other Indians and white persons on the Chickasaw Reservation. As a matter of fact, in the present case the loss resulted from the trespassing of the decedent’s cattle on the lands of the Cheyenne and Arapahoe Indians, as set forth in Finding II; but, in either event, the loss not having occurred on the Chickasaw Reser *492 vation, the United States are not liable under the terms of the treaty.
We can not agree with the defendants’ contention that under section 13 of the act of March 3, 1891 (26 Stat. L., 851, 854), providing “That the investigation and examinations, under the provisions of the acts of Congress heretofore in force, of Indian depredation claims, shall cease upon the taking effect of this act,” thereby takes* from the Interior Department the investigation of claims of Indians arising under treaties between them and the United States, nor will the language of the section justify such construction.'
Prior to the passage of that act the Interior Department had for years been investigating claims for Indian depredations under the act of 1834 (4 Stat. L., 131), to regulate trade and intercourse with the Indian tribes, and the act of March 29, 1872 (17 Stat. L., 190; now Eev. Stats., secs. 445 and 446), and the appropriation act of March 3, 1885 (23 Stat. L., 376), and subsequent like acts. The result of such investigations had been reported to Congress from time to time, but without favorable action thereon. Hence the act of March 3, 1891, supra, conferring jurisdiction upon the Court of Claims to hear and adjudicate such claims.
While the language of section 13 of the act of 1891 is broad, it in terms applies only to “ the investigation and examinations, under the provisions of the acts of Congress heretofore in force; ” so the language that upon the taking-effect of this act such investigation and examinations “ shall cease ” applies only to such claims as the department was authorized to investigate under acts of Congress theretofore in force. It certainty can not be successfully claimed that Congress by the language referred to thereby intended to take away from the Interior Department, charged with the management of Indian affairs, the investigation of claims of Indians for losses which they may sustain by depredations committed by other Indians or white persons in violation of treaty rights; and since there is no statute in express terms conferring jurisdiction upon any other department to consider such claims, we must hold that they are still within the power and jurisdiction of the Interior De *493 partment; and being within the jurisdiction of the Interior Department the Secretary had authority to transmit the claim to this court under section 2 of the act of March 3, 1883. True, when that department has investigated such claims their result will be certified to the Treasury Department as under Revised Statutes, section 236, all accounts against the United States, whether as debtor or creditor, have to be settled in the Treasury Department.
The foregoing findings, and conclusion of law, and opinion are ordered to be certified to the Secretary of the Interior for his guidance and action.